E-FILED
Friday, 25 October, 2019  08:52:47 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| ERIC D. WAGNER,        )<br>                                     )<br>        Petitioner,         )<br>                                     )<br>        v.                           )    Case No. 19-cv-1050-JES<br>                                     )<br>UNITED STATES OF AMERICA,  )<br>                                     )<br>        Respondent.         ) | |

## ORDER AND OPINION

Now before the Court is Petitioner Eric D. Wagner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 1).  Wagner was convicted of knowingly attempting to persuade or induce a minor to engage in illegal sexual activity.  Wagner claims his Sixth Amendment rights were violated because his trial counsel provided ineffective assistance when he failed to argue the defenses of outrageous government conduct, entrapment, and belief of age, and to argue that he did not have the requisite intent.  He argues appellate counsel was ineffective for failing to raise these issues on appeal as well.  He also believes that counsel failed to find text messages that would have supported his version of events and that the government committed a *Brady* violation for failing to turn over these allegedly existing text messages.  The Court finds that Wagner's claims are not supported by the law or the evidence and that he did not receive constitutionally ineffective assistance of counsel.  For the reasons explained below, his Motion (Doc. 1) is DENIED.

# I. BACKGROUND[1]

On January 13, 2014, Detective Avery, an undercover officer posing as "Jen," posted an advertisement on the social media website Craigslist indicating that she (Jen) was 18 years old and was "young.bored.home alone need to find somethin to do thats fun and exciting." Trial Tr. at 37; Ex.1D at 1. Wagner responded to Jen's ad that same day:

> home alone sucks, me to, hey im looking for young girls that like boating and tubin drinking this summer out on my boat getting nakid lots of fun im 40 going on 20 I don't care how old the girls are as long as they can keep it a secret, any thing goes kind thing, I can bring the drinks but you want weed you got to get that, im clean and cant have any kids so we can play all day, I like young tight, last year I had 2 sisters but they moved so im looking for new fun, open to ideas, we can meet up sooner try things out and make plans, your pic gets mine, lets have fun

Trial Tr. at 37, 38; Ex.1D at 1. On January 15, 2014, Jen responded to Wagner's message, informing him that she was only 15 years old and that she would understand if he did not want to talk to her because of her age. Trial Tr. at 39; Ex.1D at 1. Wagner answered, "im still interested." *Id*.

Over the next 13 days, Wagner sent numerous text messages and emails to Jen. Ex.1D at 2-21. In those messages, Wagner asked Jen if she was a "cop," emphasized the importance of secrecy, asked her whether she "shaved" and "like[d] a guy going down on [her]," said he was not the type of "guy that will hump and run," inquired whether she "use[d] anything" when she "play[ed]" with herself, described how he would use his "firm hands" to "slowly push[]" her "legs open" and then use his tongue to "lick[]" and "suck[]" her when they met in person, and instructed her to get a "fake id." Ex.1D at 2, 5, 7, 12, 18, 20.

---

[1] Citations to documents filed in this case are styled as "Doc. __." Citations to the record in the underlying criminal case, *United States v. Wagner,* District Court for the Central District of Illinois, Peoria Division, Case No. 14-cr-10013-JES, are styled as "R.__." The trial transcript is cited as "Trial Tr." and can be found at R. 61 and R. 62.

"Jen" made multiple references to her age being 15 in these messages. Trial Tr. at 40, 51, 74, 182. At Wagner's repeated request, the undercover agent also emailed pictures of "Jen" on two occasions. Trial Tr. at 44, 47. The pictures were not actually of "Jen," but were pictures of a 15-year-old girl, which the undercover officer had permission to use. Trial Tr. at 44. Wagner and a female agent posing as "Jen" also talked on the phone three times during this period. The female agent was at least in her 30s. Trial Tr. at 119, 173. The final call, on January 27, 2014, was recorded and played for the jury at the trial.

Through a series of messages and phone calls, Wagner and Jen agreed to meet on January 28, 2014, at a Casey's General Store in Peoria, Illinois. Trial Tr. at 61, 75, 79; Ex.1D at 4, 13, 20, 21. Upon Wagner's arrival that night, law enforcement officers arrested him. Trial Tr. at 79-87. A search of Wagner's pickup truck resulted in the seizure of condoms and a sheet that Wagner had told Jen he would bring with him "to put underneath [her] butt so in case there's a mess." Trial Tr. at 97; Ex. 2TR at 20. Agents also discovered internet searches on January 22, 2014 and January 27, 2014 for "Girls First Time Having Sex," "Lose Your Virginity Without Pain," and "15 year old girl with older guy" on his computer. Trial Tr. at 108-109. During his post-arrest interview, the interviewing agents testified that Wagner said that he knew Jen was 15 years old and that he would have had sex with Jen if given the opportunity. Trial Tr. at 96-97, 163. Wagner also said that her voice sounded like an 18 or 19-year-old. Trial Tr. at 134, 163.

On February 26, 2014, a grand jury charged Wagner with one count of knowingly attempting to persuade or induce a minor (Jen) to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422. A two-day jury trial began on May 11, 2015. The government presented evidence, which included all the text messages and emails sent between Wagner and "Jen," a summary of their first two calls, and a recording of their last phone call.

After the Government rested, Wagner's counsel, Mr. Alvarado, moved for an acquittal arguing that there was insufficient evidence to show that he was meeting a minor, and that interstate commerce was used. Trial Tr. at 234-35. The Court denied the motion. Trial Tr. at 237. Wagner did not testify, and defense counsel had no evidence or witnesses to present.

After the two-day trial, the jury found Wagner guilty. R. 38, Verdict. On October 1, 2015, Wagner was sentenced to 132 months' imprisonment, followed by 12 years' supervised release. R. 49, Judgment. During Wagner's allocution, he claimed that he was just "[p]laying games with scammers and the fake ads" and it was "[his] own little way of getting even" with those whom he claimed had scammed him over the years. R. 60, Sent. Tr. at 12-13. He claimed that "there is just no way . . . [he] would ever be with somebody that young" and he only planned to take Jen to a mall the night of his arrest. *Id.*

Wagner appealed his sentence on several grounds. The Seventh Circuit affirmed the guidelines calculation and one of the conditions of supervised release, but vacated two special conditions of supervised release. R. 66, Mandate. Wagner was resentenced to the same prison and supervised release term, but without the vacated supervised release conditions on February 14, 2018. R. 71, Amended Judgment.

On February 19, 2019, Wagner filed this Motion to Set Aside, Vacate, or Correct Sentence Pursuant to 28 U.S.C. § 2255. He raises the following grounds for relief: (1) the government's conduct in creating and posting Craigslist personal ads amounted to outrageous government conduct in violation of Wagner's due process rights and his trial and appellate counsel provided ineffective assistance when they failed to raise this argument at trial and on appeal; (2) counsel was ineffective for failing to raise an entrapment defense, failing to seek an entrapment jury instruction, and failing to argue the defense of entrapment as a matter of law and

seek an acquittal; (3) counsel was ineffective for failing to seek or argue a belief of age defense and jury instruction, and appellate counsel was deficient in not raising an age-related defense in the direct appeal; (4) that counsel was ineffective because no jury instruction or appellate argument was presented regarding the requisite intent elements, and Wagner did not have the requisite intent so he is factually innocent of the offense; (5) trial counsel was ineffective for failing to investigate and obtain exculpatory evidence, specifically text messages that indicated his belief that "Jen" was twenty-years old and demonstrated his reluctance to meet; and (6) his rights under *Brady v. Maryland*, 373 U.S. 83 (1963) were violated when the Government withheld and deleted exculpatory text messages and emails.

The Court ordered the Government to respond, which it did on April 25, 2019 (Doc. 8). The Government's response includes an affidavit from Wagner's trial counsel, Mr. Alvarado (Doc. 8-1). Wagner filed a reply on June 21, 2019. This Order follows.

## II. LEGAL STANDARD

A person convicted of a federal crime may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Relief under § 2555 is an extraordinary remedy because a § 2255 petitioner has already had "an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.2d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 268 (1995).

Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." *Guinan v. United States*, 6 F.3d 468, 470 (7th Cir. 1993) (citing *Scott v. United States*, 997 F.2d 340 (7th Cir. 1993)). A § 2255

motion is not a substitute for a direct appeal. *Doe v. United States*, 51 F.3d 693, 698 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 205 (1995); *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). However, "it is generally proper to raise arguments of ineffective assistance of counsel for the first time on collateral review in a § 2255 petition because such claims usually. . . involve evidence outside the record." *Galbraith v. United States*, 313 F.3d 1001, 1007 (7th Cir. 2002).

The Sixth Amendment guarantees criminal defendants effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984). Under *Strickland's* familiar two-part test, Petitioner must show both that his attorney's performance was deficient and that he was prejudiced as a result. *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). "[I]neffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed. Counsel's work must be assessed as a whole; it is the overall deficient performance, rather than a specific failing, that constitutes the ground of relief." *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005). Courts, however, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 690.

A prisoner must also prove that he has been prejudiced by his counsel's representation by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail. *United States v. Delgado,* 936 F.2d 303, 311 (7th Cir. 1991). To succeed on a claim that appellate counsel was ineffective for failing to raise an argument, a petitioner "must show that there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been

raised." *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010). Therefore, the Court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

## III. DISCUSSION

### A. Wagner's Trial and Appellate Counsel Did Not Provide Ineffective Assistance of Counsel.

*1. "Outrageous Government Conduct" Defense*

Wagner first challenges his counsels' failure to raise a defense of outrageous government conduct. Wagner argues that the government's conduct in creating and posting Craigslist personal advertisements amounted to outrageous government conduct in violation of Wagner's due process rights. Wagner's defense counsel stated in his affidavit that while he was aware such a defense was theoretically possible, he believed it would have been frivolous to make the argument in this case. Doc. 8-1, Resp. App. p.1. The Court agrees.

As Wagner concedes in his petition, the defense of outrageous government conduct is not recognized in the Seventh Circuit. Doc. 1, Pet. at 2. The Seventh Circuit has repeatedly stated that the doctrine of outrageous government conduct is not a viable defense in the Seventh Circuit. *See, e.g., United States v. Boyd*, 55 F.3d 239, 241 (7th Cir. 1995) (holding that the doctrine "does not exist in this circuit"); *United States v. Smith*, 792 F.3d 760, 765 (7th Cir. 2015) (citing cases and noting that the Seventh Circuit has "repeatedly have reaffirmed [their] decision not to recognize the defense"). An attorney is not ineffective for failing to make a meritless argument. *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993); *United States v. Nolan,* 910 F.2d 1553, 1564 (7th Cir. 1990). Because any argument regarding the doctrine of

outrageous government conduct is meritless under Seventh Circuit law, the Court finds that Wagner has shown neither that his trial counsel nor appellate counsel was deficient for failing to raise it, nor that he could have been prejudiced.

    *2. Entrapment Defense*

Wagner next argues that trial and appellate counsel should have presented an entrapment defense. Wagner's trial counsel states he thoroughly discussed an entrapment defense with Wagner and that they agreed not to raise the issue at trial. Doc. 8-1, Resp. App. p.2. Wagner, however refutes that any discussions took place. Nonetheless, even if no discussions were held, the Court finds that his defense counsel's decision not to raise the defense was both a reasonable trial strategy and could not have caused any prejudice.

To prove an entrapment defense the defendant must show both that "the defendant was not predisposed to commit the charged crime before the intervention of the government's agents and the government's conduct induced him to commit it." *United States v. Mayfield*, 771 F.3d 417, 420 (7th Cir. 2014). A "defendant is entitled to an entrapment jury instruction if he can show that some evidence supports both elements of the defense." *Id.* Importantly, a "predisposition inquiry focuses on whether the defendant 'otherwise would . . . have attempted' the crime without government intervention." *Id.* at 428. And to show illegal inducement, a defendant must show "government solicitation of the crime *plus* some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts." *Id.* at 434-35. Examples of the "other conduct" include: "repeated attempts at persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward beyond that inherent in the customary execution of the crime, pleas based on need, sympathy, or friendship, or any other conduct by government agents that

creates a risk that a person who otherwise would not commit the crime if left alone will do so in response to the government's efforts." *Id.*

Here, Wagner has not shown that an entrapment defense or jury instruction would have been allowed, even if counsel had argued for one. Wagner argued that he was induced "due to the ad portraying an 18-year-old, and the use of the officer who sounded on the telephone to be of legal age the context of the ad and conversations, when taken as a whole resulted in the illegal entrapment." Doc. 1, Pet. at 3. These facts, however, do not show any illegal inducement on the part of the government, and would appear to lend more support to his belief of age defense. Moreover, while the undercover officer posing as Jen made the Craigslist post indicating that she was 18, in Jen's first response to Wagner she stated that she was only 15. Trial Tr. at 39; Ex. 1D at 1. If someone would not otherwise "commit the crime if left alone," the conversation likely would have ended there. Instead, Wagner responded "im still interested." *Id.* Throughout the 13 days of texting, emailing and phone calls, Jen repeatedly stated her age, and Wagner repeatedly stated he did not care and it did not matter. The text messages instead show that Wagner was attempting to induce Jen to have sex and to have her keep their discussions secret. Wagner, not the undercover officer, initiated the conversation of a sexual nature and the idea of meeting up.

In reply, Wagner points to *United States v. Senke*, No. 3:16CR373, 2017 WL 4159795, at *6 (M.D. Pa. Sept. 19, 2017), to argue that he was entitled to an entrapment instruction because the government "initiated the action" by posting the craigslist ad. However, the facts of *Senke* differ dramatically from the facts here. In *Senke*, the government posted on an adult-only website indicating that he was 18 years old and did not state that he was 14 years old until the conversation had already progressed and the defendant had attempted to end the conversation.

Once the defendant was told that the individual was 14 years old, he stated "I didn't know u were 14 years old to I have to block u." *Id.* at *4. However, the investigator persisted, stating he was in love with the defendant and accusing the defendant of being mean whenever the defendant appeared to lose interest. *Id.* at *6. The investigator contacted the defendant multiple times after the defendant indicated that he did not wish to continue speaking with the investigator. *Id.* The only way in which Wagner's case resembles *Senke* is that an investigator made an initial post on a social media website indicating that the individual was an adult. Unlike *Senke*, Wagner was not deterred when he was told that the individual was actually 15. The government's one action of posting a craigslist ad is far from the "other conduct" the defendant in *Senke* faced. *See also Mayfield*, 771 F.3d at 434-35 (to show illegal inducement, a defendant must show "government solicitation of the crime *plus* some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts.").

In sum, there is no evidence the government illegally induced Wagner, so Wagner was not entitled to an entrapment defense. Accordingly, Wagner was not prejudiced by the failure of either trial or appellate counsel to raise the defense of entrapment when he would not have been entitled to an entrapment jury instruction at trial. Additionally, whether or not trial counsel discussed his strategy with Wagner, his strategy to not raise the defense at trial was within "the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 690.

### 3. Belief of Age Defense

Wagner argues that trial counsel was ineffective for failing to seek or argue a belief of age defense and jury instruction, and appellate counsel was deficient for not raising an age-related defense in the direct appeal. An element of Wagner's offense, as charged in the

indictment, was that, had he completed the crime, he could be charged with a criminal offense under 720 ILCS 5/12-16(d). He argues that there should have been a jury instruction addressing the affirmative defense of a reasonable belief that the individual was 17 years of age or older under 720 ILCS 5/11-1.70(b). Doc. 10, Reply at 2.

As an initial matter, as Respondent points out, trial counsel *did* present a belief of age defense. Trial co-counsel Daniel Hillis of the Federal Defender's Office argued extensively during closing arguments that Wagner believed he was meeting an adult. Defense counsel argued that "Jen" was pretending to be 15 on the Internet and "Mr. Wagner could pretend along with Jen." Trial Tr. at 294. Defense counsel argued that the pictures Jen sent to Wagner didn't definitively appear to be a 15-year-old; that Mr. Wagner told his coworkers he was meeting a 19-year-old for dinner; that the language used by Jen in the e-mails and text messages sounded "obviously fake" and appeared to be somebody pretending to be a 15-year-old; and Wagner's intent and purpose was to have sex with an adult. Trial Tr. at 294-96. Defense counsel also argued that the undercover female posing as Jen during the telephone conversations with Wagner did not sound like a 15-year-old and did not use the language that a 15-year-old would have used. Trial Tr. at 298-99. Defense counsel argued that "the evidence at the heart of this case shows that Mr. Wagner wanted to have sex with somebody he believed was an adult. That was his intent when he went to Casey's, to have sex with a person whose voice showed to him she was an adult." Trial Tr. at 301. The jury was instructed that they were required to find beyond a reasonable doubt "that the defendant believed that the individual was less than 18 years of age." Trial Tr. at 265. The jury, returning a verdict of guilty, rejected defense counsel's argument.

Wagner's argument, as clarified by his reply, however, is that, because the relevant age of consent under Illinois law is 17 years old, the jury should have been instructed that it was a

defense to the crime if he reasonably believed the individual was *17* years of age or older. Here, the jury was instructed, in relevant part, that it must find that "the defendant believed that the individual was less than 18 years of age; and, . . . if the sexual activity had occurred, the defendant would have committed the criminal offense of aggravated criminal sexual abuse under Illinois law." Trial Tr. at 265. They were further instructed that "It is a criminal offense under Illinois law for a person to commit an act of sexual penetration or sexual conduct with a victim who is at least 13 years of age but under 17 years of age and the accused is at least five years older than the victim." Trial Tr. at 266. So, read together, Wagner is right that the jury might not have considered whether Wagner had a reasonable belief that the individual was 17 years old or older as opposed to 18 years old or older.

However, it is unlikely that Wagner would have been entitled to a jury instruction as to the affirmative defense of reasonable belief that the individual was over 17 under Illinois law. Wagner was convicted under 18 U.S.C. § 2422(b), which provides that: "Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be [punished]." *Id.* The statute only requires a finding that the defendant could have been *charged* with a criminal offense—and whether Wagner would have been entitled to an affirmative defense jury instruction under Illinois law had he committed such an offense has no impact on whether he could have been *charged* with the crime.

Moreover, any error in failing to give such a jury instruction was harmless. There was no evidence that Wagner believed that Jen was 17 years old as opposed to 18 years old or older.

And, as recounted above, Wagner's trial counsel repeatedly argued and pointed out to the jury all of the reasons why Wagner allegedly believed Jen was 18 or over. *See, e.g.,* Trial Tr. at 294-96, 298, 301. The jury had ample evidence to reject counsel's argument and, in finding Wagner guilty, did reject this argument. Wagner has not shown how the jury would have reached a different result if they were told 17 was the relevant age as opposed to 18. Accordingly, Wagner cannot show any prejudice even if defense counsel had errored by not pursuing this defense.

Additionally, appellate counsel was not ineffective for failing to raise this argument on appeal. *See Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010) (whether appellate counsel should have challenged the sufficiency of the evidence depends on whether that claim had a "reasonable probability" of "alter[ing] the outcome" of the direct appeal). Appellate counsel had no grounds to raise an argument related to Wagner's belief of Jen's age—which would have been a sufficiency of the evidence challenge. The Seventh Circuit will "overturn a conviction based on insufficient evidence only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Johnson*, 729 F.3d 710, 714 (7th Cir. 2013) (*quoting United States v. Hills*, 618 F.3d, 619, 637 (7th Cir. 2010)). Here, there was more than sufficient evidence at trial for the jury to conclude that Wagner believed he was meeting a 15-year-old. *See, e.g.,* Trial Tr. at 40, 51, 74, 182 (reading communications where Jen stated her age of 15, and Wagner indicated that it did not matter to him); Trial Tr. at 96-97, 163 (testimony of the arresting officers that Wagner said that he knew Jen was 15 years old and that he would have had sex with Jen if given the opportunity). Wagner cannot show he suffered any prejudice from his appellate attorney's failure to raise a sufficiency of the evidence challenge when he cannot show that he had would have been successful with the challenge.

*4. Requisite Intent for Enticement of Minor Offense*

Wagner also claims he is factually innocent of the offense because he did not have the requisite intent and that his trial and appellate counsel were ineffective because no jury instruction or appellate argument was presented regarding the requisite intent. Wagner argues that "talk of future activity does not constitute enticement. Nor can enticement be found where the supposed minor is the one pressuring and cajoling the defendant." Doc. 1, Pet. at 4.

Wagner was convicted of attempt under 18 U.S.C. § 2422(b). Again, this statute provides that: "Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be [punished]." *Id.* To prove an attempt conviction, the government must prove "that [a defendant] acted with the specific intent to commit the underlying crime and that he took a substantial step towards completion of the offense." *United States v. Cote*, 504 F.3d 682, 687 (7th Cir. 2007). The requisite intent requirement for an attempt of § 2422(b) is "that the defendant specifically intend to induce, entice or coerce a minor." *Id*.

At trial, the jury was properly instructed that they must find the following elements beyond a reasonable doubt:

> One: That the defendant used a facility or means of interstate commerce to knowingly attempt to persuade, induce and entice an individual to engage in sexual activity; and, two, that the defendant believed that the individual was less than 18 years of age; and, three, if the sexual activity had occurred, the defendant would have committed the criminal offense of aggravated criminal sexual abuse under Illinois law; and, four, the defendant took a substantial step toward committing the crime of enticement of a minor, with all of you agreeing as to what constituted the substantial step.

Trial Tr. at 264-65.  Accordingly, the Court finds that the jury was properly instructed as to the requisite intent.  Trial counsel was not ineffective for failing to object when the instructions were not improper.

Moreover, there was ample evidence at trial for the jury to rely on to find that Wagner had the requisite intent for an attempt conviction.  Evidence presented showed that Wagner groomed Jen for sex, arranged a meeting place and time, and actually traveled to the meeting place.  The jury could have found that Wagner took a substantial step towards completion of the offense when he drove to Casey's to meet Jen.  The evidence showed that Wagner brought up the possibility of a sexual relationship and groomed Jen for sexual activity.

Wagner argues that he only wanted to meet for "summer-time activities" and that it was "Jen who was insistent on meeting earlier."  Doc. 1, Pet. at 3-4.  He also argues that it was Jen that induced him.  However, while Wagner suggested that they meet up in the summer, there was sufficient evidence in the record for the jury to find that Wagner pushed for and desired an earlier meeting.  For example, in his initial post, while mentioning hanging out in the summer, he also states "[w]e can meet up sooner," Trial Tr. at 38; he later says that "if you[r] mom ever . . . let you out we can get something to eat, find a place to talk," Trial Tr. at 48; and when they arrange a meeting on January 28, a date Jen says her mom will be working late, Wagner states "wish we could meet sooner."  Trial Tr. at 55.  Moreover, it was Wagner who repeatedly used sexually explicit language and suggested a sexual relationship.  *See, e.g.,* Ex. 1D at 2, 5, 7, 12, 18, 20.  Wagner's internet searches also indicated he intended to have sex.  *See* Trial Tr. at 108-109 (recounting Wagner's internet searches on January 22, 2014 and January 27, 2014 for "Girls First Time Having Sex," "Lose Your Virginity Without Pain," and "15 year old girl with older guy").  From this evidence, a jury could have found that Wagner wanted sex —not just to hang

out. And evidence that Wagner intended to engage in sexual activity with Jen was probative of his intent to persuade, induce, or entice her to engage in sexual activity. *See United States v. Berg*, 640 F.3d 239, 253 (7th Cir. 2011).

Moreover, "the statute targets the sexual grooming of minors as well as the actual sexual exploitation of them. The statute's focus is on the intended effect on the minor rather than the defendant's intent to engage in sexual activity." *Berg*, 640 F.3d at 252. Accordingly, whether Wagner intended to have sex with Jen in January 2014 or the summer is irrelevant to the requisite intent. Nor does it matter, as Wagner argues, that "there was no one to entice or groom as there no inhibitions to overcome. Jen was at yes when the Craigslist ad was first posted." Doc. 10, Reply at 6. What matters is that Wagner had the *intent* to entice a minor, not that a minor was *actually* being enticed. And, again, there was sufficient evidence for the jury to rely on to find that Wagner intended to entice a minor.

Accordingly, the Court finds that there was no basis for trial counsel or appellate counsel to raise any sufficiency of the evidence challenges regarding proof of Wagner's requisite intent. Further Wagner has failed to suggest anything trial counsel should have done differently to create reasonable doubt in the minds of the jury regarding Wagner's intent. The Court finds that Wagner's counsel was neither deficient nor has he shown any prejudice.

5. *Failure to Investigate and Obtain Exculpatory Evidence*

Wagner also claims trial counsel's assistance was deficient for "failing to investigate, seek, obtain, discover, and preserve exculpatory evidence." Doc.1, Pet. at 4-5. A petitioner alleging a claim of infective assistance of counsel premised on a "failure to investigate has the burden of providing the court sufficiently precise information, that is, 'a comprehensive showing as to what the investigation would have produced.'" *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003); (*quoting United States ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1133

(7th Cir.1990)). Here, Wagner alleges he told counsel that text messages existed where Jen "had indicted his belief that she was 'twenty years old,' and messages that reflected movant's reluctance to meet so soon as 'Jen' was wanting." Doc. 1, Pet. at 4-5. Wagner fails to give any further specificity regarding what the texts said or how they would have shown his belief that Jen was 20 years old.

More importantly, he has failed to show what further actions counsel should have taken to find the allegedly missing text messages. There was no indication that the compilation of emails and text messages handed over by the government were incomplete. Defense counsel verified with Detective Avery at trial that all emails and text messages were included in trial Exhibit 1D—which had certainly been preserved and provided to the defense:

> MR. ALVARADO: Detective Avery, so 1D contains every single e-mail and text message between you posing as Jen Fuller and Mr. Wagner between January 13th and January 28th, the date of his arrest?
>
> THE WITNESS: Correct. Correct.
>
> MR. ALVARADO: There are no e-mails or texts missing from 1D?
>
> THE WITNESS: No.

Trial Tr. at 34. As the government, posing as Jen, was a participant in all relevant conversations, it was reasonable for the defense counsel to rely on the assertions of Detective Avery and the prosecution that the emails and text messages provided were a complete set. *See also,* Doc. 8-1, App. at 2 (affidavit of defense counsel Mr. Alvarado, stating that none of the discovery tendered by the government included messages or conversations that would indicate his belief that she was 20 years old). Wagner has not shown that counsel's performance was deficient for failing to investigate and has not suggested what further actions trial counsel could have taken.

The Court finds that Wagner has not shown that either his trial counsel or appellate counsel provided ineffective assistance of counsel for any of the grounds alleged in his § 2255 Motion. Accordingly, Wagner's Sixth Amendment claim of ineffective assistance of counsel is denied.

### B. Wagner Has Not Shown That There Was a *Brady* Violation.

Wagner's final ground for relief appears to raise an independent *Brady* violation claim. In *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194 (1963)*,* the Supreme Court held that suppression of evidence that is material to either guilt or punishment justifies a new trial "irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "To establish a *Brady* violation, [a petitioner] must prove that '(1) the evidence at issue was favorable to the accused, either because it was exculpatory or impeaching; (2) the evidence was suppressed by the Government, either willfully or inadvertently; and (3) the denial was prejudicial.'" *United States v. Thomas*, 835 F.3d 730, 734 (7th Cir. 2016) (*citing United States v. Kimoto*, 588 F.3d 464, 474 (7th Cir. 2009)). Respondent did not directly address this ground for relief, so the Court will assume it is not procedurally defaulted. However, Wagner provides no evidence to support a *Brady* violation, merely alleging that exculpatory text message and e-mails on Wagner's cell phone, computer and user account were deleted or suppressed. There is nothing from Wagner's petition that would allow this Court to find any of the *Brady* factors were proven. Instead, testimony by Detective Avery indicated that all e-mail and text messages were both preserved and provided to the defense. Trial Tr. at 34. Accordingly, the Court finds that Wagner has failed to allege a *Brady* violation.

### IV. CERTIFICATE OF APPEALABILITY

If Petitioner seeks to appeal this decision, he must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c) (providing that an appeal may not be taken to the court of

appeals from the final order in a § 2255 proceeding unless a circuit justice or judge issues a certificate of appealability). A certificate of appealability may issue only if Petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Here, Petitioner has not made a substantial showing of the denial of a constitutional right. The Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Petitioner Eric Wagner's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (Doc. 1) is DENIED. The Court declines to issue a certificate of appealability. This case is CLOSED.

Signed on this 25th day of October 2019.

*s/ James E. Shadid*
James E. Shadid
United States District Judge